IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN E. CALDWELL,                  :
          Plaintiff                 :
                                    : Civil Action No. 03-197J
JOANNE B. BARNHART, COMMISSIONER    :
OF SOCIAL SECURITY,                 :
          Defendant                 :

### MEMORANDUM

Susan Caldwell appeals from the decision of the Commissioner of Social Security denying her application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33. An ALJ found, on April 30, 2003, that Caldwell was not disabled up to and including that date. Tr. 13-19. The ALJ's findings are deemed to be the basis for the Commissioner's decision because the Appeals Council denied review on July 3, 2003. Tr. 5-7.

Because both counsel are experienced in social security work and have accurately stated the law in their briefs, I forego the usual boilerplate introduction restating the standard of review and the standards governing the ALJ's evaluation of evidence. I vacate the decision of the Commissioner for lack of substantial evidence to support it and remand the matter for the obtaining of additional evidence.

Caldwell, born in 1950, has a well documented history of coronary artery disease, and suffered a heart attack in her early 40's in 1992, had triple bypass surgery in 1994, and had angioplasty and the insertion of a stent in 1999. She also suffered a leg injury when a car tire rolled over her leg in 1999. Caldwell left

high school but later obtained a GED, and after being out of the labor market when her children were young, maintained a fairly steady earnings history, working as a school bus driver, nurses aide and waitress. Her last paid employment was as a deli worker at he local Bi-Lo grocery store. On July 7, 2002, Caldwell went to the hospital with left shoulder pain and a chest pain that had lasted several days. See Tr. 298, 304-06. Caldwell was discharged the next day when a heart attack was ruled out: according to attending cardiologist Mohan Mital, M.D., Tr. 283, there was no evidence that Caldwell suffer from ischemia, and she had "mild" mitral valve disease and "mild" hypertrophy of her left ventricle. Caldwell was able to exercise for six minutes to 8.4 METS. Tr. 289. Two days later Caldwell was back in the hospital with epigastric pains that were diagnosed as caused by gallstones. Caldwell had a laparoscopic cholecystectomy performed on July 12, 2002, Tr. 310, which apparently resolved the abdominal discomfort. Caldwell never returned to work as deli worker because, she testified, she grew fatigued even on light exertion and could no longer meet the physical demands of the job. She applied later that month for disability benefits, alleging disability after July 6, 2002.

There is considerable documentation of Caldwell's medical treatment, but little medical evidence that allows an evaluation of her residual functional capacity after July 2002. For that reason, the ALJ purchased a consultative opinion from Samuel Massoud, M.D.,

2

an internist. Massoud's report, based on an examination of October 9, 2002, consists of a narrative report in large part repeating Caldwell's description of her symptoms, without any advancing any opinions about how Caldwell's medical conditions might affect her ability to perform work related activity. See Tr. 340-44. In the portion of the form provided by the Commissioner which requires the examining doctor to offer an opinion, Tr. 345-48, Massoud still largely avoids giving an opinion. The Commissioner's form requires the doctor to estimate the patient's lifting and carrying abilities by weight class. This portion is blank. The Commissioner's form requires the doctor to estimate the amount of walking and standing the patient could do in an eight hour workday. This portion is blank. Massoud, repeating the objective narration from the first part of the report, wrote abbreviations in the lifting and carrying portion that Caldwell's "[muscle power 5/5 no muscle atrophy]." In the standing and walking portion, the abbreviations can be translated as "[[walking] ½ block leads to chest pain. Normal station and gait.]" Tr. 345.

        Only a week after Massoud's examination, a second residual functional capacity form was filled out, this one by a doctor identified only as a DDS physician, see Tr. 2, or a claim examiner for the state disability service, Tr. 15, whose one-letter signature cannot be deciphered. The records reviewer concluded, on the basis of Massoud's examination and Caldwell's other medical records, that

Caldwell could perform the exertional requirements of light work. See Tr. 350. Although the opinion of a physician who simply reviews records is entitled to some weight under the Commissioner's regulations, given the anonymity of the source (together with the lack of record support for some of its factual assertions, such as the statement that Caldwell worked after her alleged onset date, Tr. 354) there is no way I can consider it substantial evidence for the ALJ's conclusion. Charles Ochswald, M.D., examined Caldwell in January 2003 and described findings similar to Massoud's. Tr. 356-57. Ochswald added that "Due to her inability to perform work and effort activity because of her Class III dyspnea, chest pressure and suspect angina, I suggest she not return to work." Tr. 357. No doubt recognizing the problems with offering "suggest" as a prognosis, Caldwell's counsel sent Ochswald a form similar to that used by the Commissioner, Tr. 362, which Ochswald returned on January 30, 2003. Ochswald checked the box stating that his evaluation was that Caldwell had no ability to work at any level of exertion, even sedentary, and otherwise offered no additional opinion. id.

According to the Commissioner's regulations, light work requires lifting objects up to 20 pounds, with frequent lifting or carrying of objects up to 10 pounds, or requires lifting less weight but with a "good deal" of walking or standing or sitting and operating arm or leg controls; sedentary work requires the

4

occasional lifting of objects up to 10 pounds and involves mostly sitting, with only occasional walking or standing. 20 C.F.R.§ 404.1567. Because of Caldwell's age, education, and skill level, if she is only able to perform sedentary work, the Commissioner's medical vocational guidelines would classify her as disabled, while if she were able to perform a full range of light work she would be considered not disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14 (sedentary work) compare Rule 202.14 (light work).

At the ALJ hearing, Caldwell testified to fatigue upon any exertion, that her activities were limited, and that her husband performed most of the housework. The ALJ found that Caldwell's description was "not totally credible in light of her descriptions of her daily activities and life style, the objective medical evidence of record and treating medical opinions regarding the severity of the claimant's condition and functional limitations." Tr. 15. The ALJ found Caldwell capable of a limited range of light work, and if this finding is supported by substantial evidence, asked the appropriate questions of a vocational expert, and determined properly that there were many jobs in the national economy for Caldwell if she could do a range of light work.

The crux of the appeal, therefore, is whether adequate evidence supports the ALJ's rejection of Caldwell's description of her disabling fatigue upon any sustained exertion for the three

5

reasons stated above by the ALJ, namely 1) the inconsistencies of Caldwell's testimony with her written statements about her daily activities, 2) the "objective medical evidence" of record, and 3) "treating medical opinions regarding the severity of the claimant's condition and functional limitations."

The ALJ could discount Caldwell's hearing testimony somewhat because there are some minor contradictions with her written statements, but those minor contradictions about how long Caldwell can sit without pain, Tr. 15, because they would at most affect the correctness of a finding about Caldwell's ability to perform sedentary work, are not relevant to the dispositive issue in the ALJ's findings, which is her ability to perform the demands of light work. As for the objective medical evidence, the ALJ does not say what "medical evidence of record," other than the paucity of doctor visits, Tr. 15, contradicts Caldwell's complaints. As for "treating medical opinions," there are no such opinions in the record. Ochswald comes the closest to being a treating physician since he saw Caldwell twice, but his opinion is definitely not supportive of a finding that Caldwell could perform light work. Massoud is clearly a consulting physician, not a treating one, and even if his note of "no muscle atrophy" is an extremely guarded way of expressing doubts about Caldwell's description of her symptoms, he expresses no positive opinion at all about Caldwell's abilities. The unknown records reviewer's opinion (clearly not the opinion of

6

a treating physician) relies in part on assertions not supported by the record. None of the other reports or notes in the record express an opinion about Caldwell's abilities in the period after July 2002.

An ALJ has a duty to develop the record in cases where a medical issue of significance needs clarification or updating. The ALJ recognized that duty in this case and obtained a consultative examination from an appropriate physician. Because of the caution of the consulting physician in expressing an opinion, however, the ALJ was left with no real guidance about Caldwell's residual functional capacity after July 2002. Caldwell may be able to meet the exertional demands of light work, but neither Massoud's opinion nor the opinion of the records reviewer are substantial support for that finding. On remand, the Commissioner should take additional evidence.

DATE: 9/15/05

Keith A. Pesto,
United States Magistrate Judge

cc:
James Pappas, Esquire
South Street Station
709 Franklin Street
Johnstown, PA 15901

John J. Valkovci, Esquire
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901